MACKINTOSH and others *v.* FLINT & P. M. R. Co. and others.

*(Circuit Court, E. D. Michigan.* March 7, 1887.)

CORPORATIONS—PREFERRED AND COMMON STOCK—RIGHTS OF HOLDERS OF COMMON STOCK.

A certificate of organization and articles of association of a railroad, reorganized after insolvency and judicial sale under 1 How. St. Mich. § 3314, provided for the issue of (1) preferred stock, upon which a 7 per cent. dividend was to be paid for five consecutive years, if the net income, after paying interest on prior bonds, repairs, expenses of equipment, and renewals should be sufficient; and (2) of common stock, which was not to be issued or represented at any meeting until after the payment of such five annual dividends. Complainants had received certificates entitling them to common stock, when it should be issued. They filed a bill alleging that the accounts of the company had been kept wholly in the interest of the preferred stockholders, that permanent improvements had been paid for out of income, and that, if the accounts were adjusted, and the actual net income ascertained, they would show that it had been sufficient to pay the five annual dividends to the preferred stockholders. The bill further claimed an injunction prohibiting the preferred stockholders from voting at any meeting until the common stockholders were permitted to vote upon the question of the issue of stock to themselves, and prohibiting the company from disposing of any moneys until the hearing of the case, and that meantime such moneys should be paid into the income account applicable to dividends. As it did not, however, appear by the bill and affidavits that such a diversion and misappropriation of the revenue as would threaten the rights of the common stockholders was imminent, *held,* that a preliminary injunction ought not to be granted.

In Equity.

*Alfred Russell* and *I. L. Stackpole,* for complainants.

*Wm. L. Webber,* for defendants.

MATTHEWS, J. This is a motion for a preliminary injunction, heard before me in chambers by consent of parties. The case as it appears upon the bill, exhibits, and affidavits, with affidavits heard in opposition thereto, including the answer, so far as it is necessary to state it for the purposes of this motion, is as follows:

The Flint & Pere Marquette Railroad Company, the principal defendant, is a corporation organized under the general railroad laws of Michigan, of May 1, 1873, and the acts amendatory thereof, providing generally for the organization of railroad companies; and specifically in section 3314, 1 How. St., for the organization into a corporation of the purchasers of railroads acquired by judicial sale. The certificate of organization and articles of association, filed August 31, 1880, with the secretary of state, in pursuance of that section of the law, recite the facts of the judicial proceedings and sale. The railroad was constructed by the Flint & Pere Marquette Railway Company, a corporation existing under the general railroad laws of Michigan, extending from Monroe, through the counties of Wayne, Oakland, Genesee, Saginaw, Midland, Isabella, Clare, and Osceola, with a branch extending from East Saginaw to Bay City, having extended the construction of its line westerly through the counties of Lake and Mason to Ludington, at the mouth of

the Pere Marquette river, on Lake Michigan, and having a branch in Genesee county known as the "Otter Lake Branch." This company having become insolvent in 1879, proceedings were instituted by the trustees of what was known as the "Consolidated Trust Deed," in the circuit court of the United States for the Sixth circuit and Eastern district of Michigan, for a decree for the sale of the mortgaged property. A decree for sale was entered on the twelfth of June, 1880, and the property sold on June 27, 1880.

The fourth article of the certificate of incorporation is as follows:

"The capital stock of the corporation hereby organized shall be the sum of ten million dollars, in shares of one hundred dollars each, divided into two classes, to-wit: *First*, preferred stock, which shall consist of the sum of six million and five hundred thousand dollars, divided into sixty-five thousand shares, each share being the sum of one hundred dollars; *second*, common stock, consisting of three million five hundred thousand dollars, divided into thirty-five thousand shares, of one hundred dollars each.

"And it is agreed that the rights of the holders of said preferred stock and said common stock shall be as hereinafter stated, to-wit: The holders of said preferred stock shall be entitled to receive, from the earnings of said railroad company hereby organized, dividends to the amount of seven per cent. per annum, payable semi-annually or annually, as may be directed by the board of directors; provided, the net income, after paying interest on prior bonds, repairs, expenses of equipment, and renewals, shall be sufficient for that purpose, or such portions thereof as the said net income shall amount to. In case there shall be any surplus of net income after the payment of said dividend of seven per cent. upon the preferred stock, the same shall stand undivided until the next dividend day, and so from time to time, and from year to year, until such time as the holders of said preferred stock shall receive five consecutive annual dividends of seven per cent., or semi-annual or quarterly dividends equivalent thereto. In case, on any dividend day, the net income as aforesaid shall not be sufficient to pay seven per cent. annual dividend to the holders of said preferred stock, such holders of preferred stock shall have no right to have the dividends made up out of subsequent earnings; it being the intention that there shall be no accumulation of claims against the company for dividends for such preferred stock. We further certify and declare that the said common stock shall not be issued, nor any portion thereof, until after the preferred stock shall have received five consecutive annual dividends of seven per cent. from the net income as aforesaid, or other dividends equivalent thereto; nor shall said common stock be entitled to any representation at any meeting of stockholders until the same shall have been issued.

"When five consecutive annual dividends of seven per cent., or, in lieu thereof, semi-annual or quarterly dividends equivalent thereto, shall have been paid upon the preferred stock, then the common stock shall be issued and delivered to parties who may hold the certificates issued upon the surrender of the common stock of the old Flint & Pere Marquette Railway Company, or other certificates which may be issued by this company in lieu thereof; and, if there shall be any surplus of common stock, it shall be the property of the company hereby organized. After the common stock shall have been issued as above provided, the preferred stockholders shall be entitled to receive from net earnings seven per cent. dividends each year before the common stock shall be entitled to participate; and, after the payment of the seven per cent. to the holders of the preferred stock, any surplus of net earnings that may remain shall be paid as dividends ratably to the holders of the common stock, not exceeding seven per cent. in any one year. Should the net income

be greater than sufficient to pay a dividend of seven per cent. upon the whole amount of stock, both preferred and common, such surplus shall be divided ratably among the holders of the preferred and common stock. Should the net income of the company, after the common stock shall have been issued, be insufficient to pay the dividends hereinbefore provided for in any single year, such deficiency shall not be made up out of the earnings of the subsequent year or years, and this shall apply both to preferred and common stock."

It is alleged in the bill that the defendant corporation, in pursuance of the certificate of organization, issued preferred stock to the amount of $6,500,000, representing the par value of the outstanding consolidated bonds and past due coupons to May 1, 1879, inclusive, originally secured by the consolidated trust deed on which the foreclosure took place, and that certificates were issued to the holders of the common stock of the original Flint & Pere Marquette Railway Company in the form following:

"CERTIFICATE FOR COMMON STOCK WHEN THE SAME SHALL BE ISSUED.

"STATE OF MICHIGAN.

"*The Flint & Pere Marquette Railroad Company, Incorporated August 31, 1880.*

"This certificate will entitle ——— to ——— shares of the common stock of the Flint & Pere Marquette Railroad Company, when such stock shall be issued. Said common stock consists of 35,000 shares of $100 each, but will have no vote nor voice in management until issued in accordance with the plan of organization, viz.: When the preferred stock shall have received five consecutive annual dividends of seven per cent., or semi-annual or quarterly dividends equivalent thereto. This certificate is negotiable, and may be transferred on the books of the company in the city of New York on the surrender hereof.

"By order of the Board of Directors.
"*Dated, East Saginaw,* ———, 1886.          WM. W. CRAPO, President.
"H. C. POTTER, Jr., Secretary.
"A. S. APGAR, Transfer Agent."

The complainants—some of whom are citizens of the state of Massachusetts, and others of the state of New Hampshire—are severally holders of certificates of this character representing various amounts. They claim that by virtue thereof they are entitled to be regarded in equity as stockholders in the defendant corporation, and entitled to have issued to them certificates of stock in due form of law, investing them with all the rights and privileges of stockholders in such corporation.

In the first place it is contended for the complainants that the provision in the fourth article of the certificate of organization which declares "that the said common stock shall not be issued, nor any portion thereof, until after the preferred stock shall have received five consecutive annual dividends of seven per cent. from the net income as aforesaid, or other dividends equivalent thereto," is a departure from, and a violation of, the reorganization scheme assented to by the bondholders and stockholders of the Flint & Pere Marquette Railway Company, on the basis of which the decree of foreclosure and sale was had. A copy of that reorganization scheme is exhibited with the bill, and contains the following provisions:

"*Second.* The position of the obligations secured by mortgages prior to the consolidated mortgage will remain unchanged; subject, however, to the provisions hereinafter made for funding the past due interest on the same, and a portion of the interest to mature. These securities outstanding, including land-grant bonds, Flint and Holly lease bonds, Holly, Wayne, and Monroe bonds, Bay City and East Saginaw bonds, and Bay county bonds, are approximately three million five hundred sixty-eight thousand five hundred dollars, ($3,568,500.)

"*Third.* The new company to issue reorganized first-mortgage six per cent. bonds, having thirty years to run, and redeemable at the pleasure of the new company at par and accrued interest. This mortgage to be used only to fund the past due and maturing interest on the prior bonds, and for such permanent construction and improvement as may be deemed desirable by the board of directors of the new company.

"*Fourth.* Preferred seven per cent. stock shall be issued sufficient in amount to represent the par value of the outstanding consolidated bonds, and the past due coupons to May 1, 1879, inclusive. This preferred stock shall always be entitled to one vote for each and every share. Payment of dividends of seven per cent., or any part thereof, on this preferred stock, will be contingent on the net earnings of the company, and without accumulation.

"*Fifth.* Common stock shall be issued sufficient in amount to represent the outstanding common stock of the old Flint & Pere Marquette R. R. Co., and this stock shall not be entitled to vote until the new company shall have earned and paid for five successive years seven per cent. annual dividends on the preferred stock.

"*Sixth.* The preferred and common stock of the new company will be issued to the purchasing committee, who will deliver, or cause to be delivered, to the representatives, for the time being, of the holders of the eight per cent. consolidated bonds, and of the holders of the common stock of the old company who may join in this scheme of reorganization, the amount *pro rata* to which they are entitled, as near as may be, and the purchasing committee will dispose of fractions, for the benefit of the parties entitled thereto, in such manner as they may deem most expedient and equitable.

"*Seventh.* The benefit of these proceedings shall accrue only to those who shall deposit their securities and common stock with this committee within the time limited by them; it being understood that they may extend the same, from time to time, as seems to them proper for the interests of all concerned.

"*Eighth.* The purchasing committee will issue certificates and stock that they may be entitled to."

"*Twelfth.* The general principles in this scheme, and the order of priority, and the respective amounts of these organization securities and stocks, being substantially maintained, the purchasing committee may change this scheme to meet any exigencies that may arise."

1. It is insisted that according to this reorganization scheme, which it is alleged had the force of a contract between the bondholders and the stockholders of the Flint & Pere Marquette Railway Company, the complainants were entitled to the immediate delivery of certificates of common stock, instead of the certificates in fact issued under the act of incorporation, which only entitled the holders to stock to be issued in the future. It is, however, it seems to me, a sufficient answer to this claim, that the holders of the common stock of the Flint & Pere Marquette Railway Company surrendered their certificates of stock in that company to the purchasing committee, and accepted from the committee in exchange such certificates as are now held by the complainants. This they did, as it

seems, without objection or complaint at the time, and in that way must be considered to have assented to the alleged change in the scheme of reorganization as actually adopted and executed by the purchasing committee in the certificate of incorporation.

2. It is next insisted, however, upon the face of the certificate of incorporation, that the organization of the Flint & Pere Marquette Railroad Company, the present defendant, is illegal, so far as it undertakes to make any distinction in point of right or privilege between preferred and common stockholders. In other words, it is alleged and contended that there is no authority of law for the organization of a corporation by the purchasers of a railroad under a judicial sale, in which there shall be two classes of stock, preferred and common; the holders of common stock being postponed to the holders of the preferred stock in respect to the right to participate in dividends out of net earnings, or deprived of their voice and vote in the election of directors and the management of the corporation. In support of this contention, it is argued that the right to create a preferred stock cannot be implied from the general powers of the incorporation, and that it must be given by express authority of law; and that in Michigan it is given only to existing corporations, and then only to be created in a particular mode for specified purposes, and upon the happening of certain contingencies. The only statutory provision in Michigan relating to and authorizing the creation of preferred stock in railroad corporations is found in an act of February 10, 1859, § 2, (section 3409, How. St.,) which reads as follows:

"When it shall be necessary to make loans in order to meet the just liabilities, or to carry out the lawful objects and duties, of any railroad corporation within this state, or if any of its creditors holding its bonds or other obligations of indebtedness whatsoever shall be willing to exchange the same for preferred or secured stock, it shall be lawful for any such corporation, a vote of the majority of the stockholders being first obtained therefor, to issue such stock, and to secure in any lawful manner the prescribed dividends thereon, and to make the same payable in preference to dividends upon the other stock of said corporation: provided, that no dividend shall be secured greater than the rate of eight per cent., unless all the stockholders shall vote therefor, and in no case greater than the rate of interest allowed by law at the time such stock shall be issued. Such preference may be full or partial, and subject to such conditions and terms as said corporation may deem proper; and such stock shall be redeemable and payable upon such terms and at such times as shall be provided in the resolution authorizing the issue thereof, but no such stock shall be sold at less than its par value."

It is argued that, to justify the issue of preferred stock under the terms of this section, it is necessary that there shall be an existing corporation to authorize it; that the authority shall be given only by a vote of a majority of the existing stockholders, and that such preferred stock shall not be perpetual, but shall be redeemable and payable upon such terms and at such times as shall be provided in the resolution authorizing the issue thereof; and the conclusion contended for is that the section has no application whatever to the circumstances of the present case. It is thence inferred that the complainants are entitled to be regarded as

stockholders in the defendant company upon a footing of entire equality with the existing stockholders holding certificates of preferred stock under the act of incorporation, and so entitled to share with them in dividends and in the management of the corporation. On the other hand, it is argued that section 3409 shows that there may be a lawful creation of preferred stock, and, *inter-alia*, by an exchange of bonds or other obligations; that railroad corporations organized under section 3314, by purchasers at a judicial sale, are invested with all the powers and rights of any other railroad corporation; that, therefore, they may be originally constituted with any classification of capital stock which it would be lawful for the corporation to adopt after its organization; that, in the present case, the necessary assent of all actual and prospective stockholders has been already given; and that in any event the complainants can claim no other rights than those defined in their contract, contained in their certificates, which is still executory, and, if that contract cannot be enforced without a violation of law, the loss must fall upon those who seek such relief, because, if the contract fails, those who claim under it have no remedy.

In the view I take of the rights of these parties, it is not necessary at present to decide whether such an organization of the stockholders of a railroad company as that provided for in the certificate of incorporation of the Flint & Pere Marquette Railroad Company can be upheld or not. The complainants assume that they are to be considered as having the *status* in a court of equity of being present stockholders in the corporation; but the only ground on which their right rests is the contract contained in the certificates which they hold. Those certificates do not constitute them present stockholders; they contain an agreement between the corporation and the holder that the latter may become a stockholder on a certain contingency, and not before. The certificates give them a right to become stockholders on the happening of a future event. They are not stockholders, with the legal rights of such, until the certificates are in fact issued; they are not stockholders in the view of a court of equity until the event happens which entitles them to call for the issue of certificates of stock. When those certificates shall have been issued, or if the contingency ever happens which requires them to be issued, the question now mooted may be decided as to the relative rights of the holders of the preferred and common stock. Until that contingency happens the question is immaterial.

It is urged on the part of the complainants, in support of their contention on this point, that the capital stock of the defendant corporation is fixed by the certificate of organization at $10,000,000, which by the terms of the statute, it is said, represents the property in the railroad, in which, therefore, they claim to have a definite and existing interest in equity. But the language of the statute is that the stock *issued* shall represent the property in the railroad. The *unissued* stock remains nominal, merely, and becomes an actual interest vested in a stockholder only when in fact issued and delivered or transferred to him; and there is nothing in the statute which forbids the corporation from fixing a

nominal amount of capital stock, in excess of the shares actually represented by the present value of the property, to be issued in the future to represent accretions and additions to that value. If it should turn out that the conditions attached to the promised future issue of common stock are illegal, so far as they create distinctions of right between classes of stockholders, it will have then to be considered whether the illegal conditions can be treated as void, without avoiding the obligation to issue the new stock. As the corporation is now organized, there is but one class of stockholders. If the complainants seek to enforce against the corporation the obligation to issue stock of a different class, creating a distinction between stockholders forbidden by law, the consequence may be that the court will find itself restrained by law from enforcing a contract, which can only be enforced with such a result.

3. It is, however, also contended by the complainants that, according to the terms of the certificate of incorporation, they are now entitled to the issue of certificates of common stock. This claim is predicated, however, not upon the allegation that the preferred stock has received five consecutive annual dividends of 7 per cent. from net income, which is the contingency upon which the common stock is to issue, but is based upon the allegations which may be summed up in the general allegation that the net income of the company has been sufficient to pay five consecutive annual dividends of 7 per cent., and that the failure to declare and pay such dividends by the directors is owing to a misappropriation and diversion of the net income of the company from its legitimate purpose to other uses not authorized by the terms of the organization of the corporation. The net income of the company applicable to the payment of dividends to the holders of preferred stock, as defined by the certificate of incorporation, is what remains of the earnings of the company after paying interest on prior bonds, repairs, expenses of equipment, and renewals.

It is alleged in the bill that—

"The accounts of the company have been kept wholly in the interest of the preferred stockholders, and without regard to the interest of the common stockholders, and in disregard of the trust created, and with the intent on the part of the preferred stockholders, and the officers and agents appointed by them, of preventing the common stockholders from having any voice whatever in the management, and with a view to postponing the issue of the common stock to an indefinite period. And your orators are informed and believe, and so aver, that for this purpose accounts have not been properly kept of permanent improvements in the property which should have been paid for as additions to the plant, by way of construction and equipment, out of funds applicable thereto, but that said permanent improvements have been in fact paid for out of the current yearly income from the property applicable to dividends. And your orators show that earnings have been diverted from their proper application to dividends, and spent upon the railroad, and upon its road-bed, rails, track, station buildings, and other property, and in the building of branches, especially a branch to the city of Manistee, and in the building of side-tracks and sidings, and the purchase and improvement of cars, engines, locomotives, and other equipment; that the operating expenses have in this way been unduly increased, and the net income diminished,—all to the

prejudice of the common stockholders, in violation of their rights, and of the agreement, whether contained in the scheme of reorganization, or in the certificate of organization filed with the secretary of state."

It is also particularly alleged in the bill that the Flint & Pere Marquette Railroad Company is in possession of a land grant received from the United States through the state of Michigan, the proceeds of which are applicable to the construction and equipment of the road, and to the payment of bonds issued to borrow money for such construction and equipment; and that of the said fund arising from the proceeds of the sales of said lands heretofore made, in addition to a large amount of unsold land, and in excess of the amount necessary to satisfy the trusts on which the said land is held by trustees for the payment of outstanding obligations, there is a large amount of cash on hand,—several hundred thousand dollars in the aggregate,—which constitutes a part of the general assets of the company applicable to the payment of dividends, or, if not directly so, which should be applied to making good the deficiencies in the net income applicable to the payment of dividends which have been created by the misappropriation of the net income to purposes of construction and permanent improvement.

It is alleged in the bill that dividends have in fact been made on the preferred stock, and paid, as follows: In 1881, $5\frac{1}{2}$ per cent.; in 1882, $6\frac{1}{2}$ per cent.; in 1883, 7 per cent.; in 1884, 7 per cent.; and in 1885, 4 per cent. And it is alleged "that the real and actual net income of these several years, if the affairs of said railroad company had been properly conducted, and the accounts thereof kept with a legal and proper consideration of the rights of your orators, as hereinbefore set forth, together with the surpluses remaining on hand in each several preceding year, was, after paying interest on prior bonds, repairs, expenses of equipment and renewals, sufficient for the payment of a dividend of seven per cent. in each year to said preferred stockholders; and that it was the duty of the defendant corporation to pay such dividends, and issue such common stock, on the first of January, 1886." It is further alleged in the bill "that the surplus on hand, and applicable to dividends, at the end of the year 1885, is not the true surplus, but that it is greater by many thousands of dollars; and they further show that they are entitled to share in the net income of the present year, to-wit, the calendar year eighteen hundred and eighty-six, and that they are entitled to have the true surplus of the previous years, and remaining on hand January 1, 1886, added to the true income of the current year; and they are informed and believe, and so aver, that said sum is more than sufficient to pay a dividend at the rate of seven per cent. to the preferred stockholders, and that a considerable surplus and excess remains for distribution as a dividend to the common stockholders." It is further alleged in the bill that the complainants have endeavored to procure an examination of the accounts of the corporation with a view of stating the results fully and accurately, but that upon application to the corporation this has been denied. The bill accordingly prays for a specific performance of the agreement for the issue of common stock, and to that end

for an account of the income of the defendant company from the date of its organization for each successive year, and a correction of the same, if necessary, so that the amount of the income applicable to the payment of dividends upon the preferred stock may be ascertained.

The injunction now moved for is described in the third and ninth prayers, as follows:

"*Third.* That the defendant corporation and the other defendants may be enjoined, both by preliminary and perpetual injunction, from recognizing such preferred stockholders as entitled to vote, or in any other way, or from paying any dividend on said preferred stock, until a vote of the common shareholders authorizing such issue of the preferred stock can be obtained, or until such equitable relief can be granted to the common shareholders as this court deem proper."

"*Ninth.* That your honors will enjoin said railroad company and its directors, its officers and servants, by preliminary writ of injunction, from disposing of or spending any moneys received, or to be received, from said trustees, until this case can be heard and determined; and that this honorable court will order such amounts from said trusts in the hands of said company to be paid into the income account applicable to dividends as will reimburse said income account for any sums wrongfully taken therefrom and spent upon construction or equipment, or in any other manner; and further, such other sums to be paid to said income account as may legally belong to the same."

The complainants will not be entitled to have certificates of common stock issued to them in lieu of the certificates now held by them, if at all, until it shall appear that the earnings of the company, after paying interest on prior bonds, repairs, expenses of equipment, and renewals, have been sufficient to pay to the holders of the preferred stock five consecutive annual dividends of 7 per cent. Whether they shall be entitled to such a decree can only be ascertained after the statement of the account prayed for and on final hearing. In the mean time, they might be entitled to prevent, by the writ of injunction, any plain diversion of the earnings and revenue of the company from the purposes named in the certificate of organization, to their prejudice. It does not, however, sufficiently and plainly appear to me, upon the statements in the bill and the affidavits, that such a diversion and misappropriation of the revenue as would threaten the rights of the complainants is imminent. If the directors have misapplied, or shall prior to the final hearing of the cause hereafter misapply, any of the net income of the road which ought to have been applied, or to be applied, to the payment of the dividends to the preferred stockholders, it will not and cannot prejudice the rights of the complainants to the issue of the stock contemplated by the certificate of organization; but in the mean time, and until the account of the income and of its applications can be satisfactorily adjusted, I see no ground or necessity for the injunction prayed for. The motion is therefore denied.